**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD WEBSTER, | ) | CASE NO: 1:10-cv-1587 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| FREEDOM DEBT RELIEF, LLC *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | Doc. No. 21, 22 |

This case is before the magistrate judge on referral.  Before the Court is the motion of defendant Freedom Debt Relief, LLC ("FDR") to compel arbitration and stay the proceedings.[1]  Doc. No. 21.  Plaintiff, Donald Webster ("Webster"), opposes FDR's motion. Doc. No. 59.  Also before the court is FDR's motion to dismiss Webster's complaint pursuant to R. 12(b)(6).  Doc. No. 22.  Webster also opposes this motion.  Doc. No. 58. For the reasons given below, FDR's motion to compel GRANTED by dismissing Webster's claims with prejudice.  FDR's motion to dismiss should be DENIED, as the court lacks jurisdiction to decide the merits of this action.

I

Except where otherwise noted, Webster pleads or does not deny the following

---

[1] FDR's motion also moves to join the motion of defendant Century Negotiations, Inc. ("Century") to dismiss the complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) ("R. 12(b)(6)") or, in the alternative, to stay the proceedings pending arbitration, doc. no. 18, and the motion of defendants Global Client Solutions, LLC ("Global") and Rocky Mountain Bank and Trust ("Rocky Mt.") to compel arbitration, doc. no. 23.

relevant facts.

Webster is a resident of Mentor, Ohio.  FDR is a Delaware company with a principal place of business in California.  Century is a Pennsylvania corporation with a principal place of business in Pennsylvania.  Global is an Oklahoma company with a principal place of business in Oklahoma.  Rocky Mt. is a Colorado financial institution with a principal place of business in Colorado.  Webster purports to bring this action for a class of at least 100 persons asserting claims totaling at least $5,000,000 exclusive of interest.

FDR and Century are in the business of settling, adjusting, liquidating, or prorating debt for their customers.  Global maintains accounts at such financial institutions as Rocky Mt. for the purpose of distributing funds to creditors of FDR's and Century's customers.  Global receives funds from those debtors and places the funds in its accounts until some or all of those funds are disbursed.

Webster saw an advertisement by FDR which claimed that the company could reduce debt obligations.  Webster contacted FDR at the toll-free telephone number in the advertisement.  An FDR representative then contacted Webster by e-mail and explained the debt relief programs that were available.  FDR then e-mailed Webster a copy of the agreement, which was captioned with Century's name and logo.  Webster completed the agreement on January 12, 2009.  Webster completed the 8-10 page Debt Reduction Agreement ("the Century agreement") in about 12 minutes.

Included in the agreement was a clause regarding arbitration of disputes arising under the contract:

9. Arbitration of Dispute: IN THE EVENT OF ANY DISPUTE BETWEEN THE
PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE
PARTIES AGREE TO SUBMIT THAT DISPUTE TO BINDING ARBITRATION

UNDER THE AUSPICES OF THE AMERICAN ARBITRATION ASSOCIATION (AAA). VENUE FOR SUCH ARBITRATION WILL BE IN PITTSBURGH, PA. BINDING ARBITRATION MEANS THAT BOTH PARTIES GIVE UP THE RIGHT TO A TRIAL BY JURY. IT ALSO MEANS THAT BOTH PARTIES GIVE UP THE RIGHT TO APPEAL FROM THE ARBITRATORS RULING EXCEPT FOR A NARROW RANGE OF ISSUES THAT ARE APPEALABLE UNDER PENNSYLVANIA LAW. IT ALSO MEANS THAT DISCOVERY MAY BE SEVERELY LIMITED BY THE ARBITRATORS.

Century agreement, Unopposed Motion to withdraw document and substitute Exhibit, Doc. No. 46, Exh. 1, p. 2.

In connection with Webster's agreement with Century, he also completed in January 2009 a Special Purpose Account Application ("the application") to open a bank account at a bank selected by Global, and received a copy of the Rocky Mt. Account Agreement and Disclosure Statement ("the banking agreement") when he completed his application. The banking agreement provided that when the account was opened, Global would administer the account. The banking agreement also included an arbitration clause.

On July 16, 2010, Webster filed a complaint in this court against FDR, Century, Global, Rocky Mt., and Jon and Jane Does A-K. The complaint alleged violations of the Ohio Debt Adjusting Act ("DAA"), violations of the Ohio Consumer Sales Practices Act ("CSPA"), civil conspiracy, and aiding and abetting and sought damages, rescission, injunctive relief, attorneys' fees, and costs. On October 5, 2010, FDR filed the motion currently before the court.

II.

FDR moves to estop Webster from refusing to arbitrate with FDR and to stay these proceedings until such arbitration has taken place. In *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983), the Supreme Court declared that the

-3-

"primary, substantive provision" of the Federal Arbitration Act ("FAA") was as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA reflects a "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, ___, 131 S. Ct. 1740, 1749 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24). The FAA reflects the "fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (quoting *Rent–A–Center, West, Inc. v. Jackson,* ___ U.S. ___, ___, 130 S.Ct. 2772, 2776 (2010)). Consequently, courts must treat arbitration clauses the same as other contract provisions and enforce them according to their terms. *Concepcion*, 131 S. Ct. at 1745.

Section 3 of the FAA, 9 U.S.C. § 3 ("§ 3") requires courts to stay litigation of claims that the parties have agreed to arbitrate pending the agreed-upon arbitration. Section 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon motion of any party to the agreement, unless the "making of the arbitration agreement or the failure . . . to perform the same" is at issue. *See also Concepcion*, 131 S. Ct. at 1748. However, if all the claims before the court are subject to arbitration, the court may dismiss the entire case with prejudice. *See Green v. Ameritech Corp.*, 200 F.3d 967, 972-73 (6th Cir. 2000) (citing *Alford v. Dean Witter Reynolds, Inc.,* 975 F. 2d 1161 (5th Cir. 1992)); *see also Hensel v. Cargill, Inc.*, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999).

In addition, the FAA requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

-4-

construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.  A court may not deny a motion to stay or dismiss "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Comms. Workers*, 475 U.S. 643, 650 (1986).

Because arbitration is a creature of contract, a party usually "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). Nevertheless, "[i]t does not follow . . . that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (quoting *Fisser v. International Bank,* 282 F.2d 231, 233 (2d Cir. 1960)).  "[N]onsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).  The Sixth Circuit recognizes five theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel.  *Id.* (citing *Thomson-CSF*, 64 F.3d at 776.  "[A] signatory that may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract." *Javitch*, 315 F.3d at 629 (citing *Thomson-CSF*, 64 F.3d at 779; and *International Paper Co. v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 418 (4th Cir. 2000)).  *See also JLM Indus., Inc. v. Stolt-Nielsen, SA,* 387 F.3d 163, 177 (2d Cir. 2004); *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527-28 (5th Cir. 2000); *Sunkist Soft Drinks, Inc. v. Sunkist Growers,*

*Inc.,* 10 F.3d 753, 757-58 (11th Cir. 1993); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320-21 (4th Cir. 1988); and *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* 741 F.2d 342, 344 (7th Cir. 1984); *see also Liedtke v. Frank*, 437 F. Supp. 2d 696 (N.D. Ohio 2006).  The rule that emerges from these cases is that a nonsignatory may compel a signatory to an arbitration agreement to arbitrate when (1) there is a "close relationship" between the nonsignatory and a signatory to the agreement; and (2) the claims are "intimately founded in and intertwined with the underlying contract obligations."  *Thomson-CSF*, 64 F.3d at 777 (quoting *Sunkist,* 10 F.3d at 757).

III.

In the instant case, Webster alleges a close relationship between FDR and Century. According to Webster, FDR and Century both offer debt settlement through identical debt settlement programs and standardized program materials, support one another in marketing debt settlement programs and seamlessly share customer contacts, use substantially similar and in many cases identical forms and enrollment agreements to carry out their programs, and employ Global to pay them their fees and ostensibly to distribute settlements to creditors.  When Webster contacted FDR about its programs and agreed upon one of FDR's programs after talking to an FDR representative, he was sent a contract with Century to enroll in the program. From that point forward, all correspondence and other communications were with an individual using the Century logo or name.

The claims that Webster raises against FDR are "intimately founded in and intertwined with the underlying contract obligations" between Webster and Century. Webster alleges that FDR and Century (1) fraudulently and illegally diverted to themselves in the form of fees payments he made for the purposes of satisfying creditors without

-6-

performing the services that defendants promised to render pursuant to their agreements with him; (2) conspired in this allegedly fraudulent and illegal scheme; and (3) aided and abetted this allegedly fraudulent and illegal scheme.  These allegations arise from the primary substance of the Century agreement.  The relationship between FDR and Century and the nature of the claims raised by Webster, therefore, satisfy the prerequisites for permitting FDR to estop Webster from denying a duty to arbitrate if the arbitration clause in the Century agreement requires arbitration.

The arbitration clause in the Century agreement is comprehensive and unequivocal with respect to arbitration.  The Century agreement provides, "In the event of any dispute between the parties arising out of or relating to this agreement, the parties agree to submit that dispute to binding arbitration under the auspices of the American Arbitration Association (AAA)."  Century agreement at 1.  The agreement provides no exceptions to or limitations on the requirement to arbitrate.  Consequently, the claims in the complaint fall squarely within the duty to arbitrate created by the arbitration clause.

Because FDR shares close relationship with Century, because the claims raised by Webster arise from the substance of the Century agreement, and because that agreement requires Webster to arbitrate the claims he raises in this court, FDR may estop Webster from denying a duty to arbitrate the claims he raises in his complaint with FDR.  As already noted, § 3 directs a stay of the proceedings when parties are ordered to arbitrate, but Sixth Circuit precedent permits a court to dismiss the case with prejudice if all claims must be arbitrated.  Consequently, as all claims must be arbitrated in the present case, FDR's motion to compel Webster to arbitrate and stay the case pending arbitration should be GRANTED in part by dismissing the case with prejudice.

IV.

FDR's pending motion to dismiss Webster's claims pursuant to R. 12(b)(6) is also pending before this court.  The arguments for and against that motion frequently address the merits of Webster's claims.  As Webster's claims must be submitted to arbitration, this court may not consider the merits of those claims.  Moreover, once arbitration has concluded, "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law."  *Green*, 200 F.3d at 973 (quoting *Alford,* 975 F. 2d at 1164).  Consequently, for these reasons, FDR's motion to dismiss should be dismissed as beyond this court's authority.

V.

For the reasons given above, FDR's motion to compel arbitration should be GRANTED.  Webster's claims should be dismissed with prejudice and, if Webster wishes to pursue his claims further, he should seek arbitration.  FDR's motion to dismiss on the merits should be DENIED, as the court lacks jurisdiction to decide the merits of this action.

Date:  July 13, 2011                         s/ *Nancy A. Vecchiarelli*
                                             U.S. MAGISTRATE JUDGE

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

-8-